UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WAGONER COUNTY RURAL WATER DISTRICT NO. 2, et al., ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. 07-CV-0642-CVE-PJC |
| GRAND RIVER DAM AUTHORITY, ) et al., ) ) ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Now before the Court is Defendant Oklahoma Water Resources Board's Motion to Dismiss (Dkt. # 30) and the Motion to Dismiss (Dkt. # 47) filed by the Grand River Dam Authority ("GRDA"). Defendants Oklahoma Water Resources Board ("OWRB") and GRDA (collectively "defendants") each move to dismiss the complaint as to it pursuant to Fed. R. Civ. P. 12(b)(1).[1] For the reasons set forth below, the Court finds that defendants' motions should be **granted**.

**I.**

The Grand (Neosho) River flows into the Fort Gibson Reservoir located in Eastern Oklahoma. Dkt. # 2, at 5. The instant civil action arises from the control over and use of waters impounded at Fort Gibson Reservoir. Id. at 6. Plaintiffs's complaint asserts three claims for relief. In Count One, plaintiffs seek a declaratory judgment that establishes GRDA's and plaintiffs' rights, if any, to the "water impounded at the Fort Gibson Reservoir, the water which flows . . . into the Fort

---

[1]  OWRB also moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). As discussed below, Rule 12(b)(1) mandates the same standard of review as Rule 12(b)(6). See discussion infra Part II.

Gibson Reservoir, [and] the subsurface ground water taken from water wells on land near the Fort Gibson Reservoir or its tributaries [(hereinafter "Fort Gibson water")]." Id. at 9. Plaintiffs state that OWRB also may claim some right to the Fort Gibson water and that it, therefore, should come forward and assert its rights. Id. at 10. In Count Two, plaintiffs seek an injunction prohibiting GRDA from charging plaintiffs for the Fort Gibson water that they appropriate and use. Id. at 11. In Count Three, plaintiffs seek restitution from GRDA, which plaintiffs aver "has been unjustly enriched by the sale of [Fort Gibson] water." Id. Plaintiffs claim they are "entitled to restitution for all amounts paid to GRDA for said water." Id.

While defendants assert several grounds for dismissal, both defendants assert lack of subject matter jurisdiction based on Eleventh Amendment immunity. Because this Court cannot proceed with this matter if it lacks subject matter jurisdiction, it will consider the sovereign immunity issue first.

**II.**

Federal courts are courts of limited jurisdiction and, as the party seeking to invoke federal jurisdiction, plaintiffs bear the burden of proving that jurisdiction is proper. See Southway v. Cent. Bank of Nigeria, 328 F.3d 1267, 1274 (10th Cir. 2003). A court lacking jurisdiction "cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974). Motions to dismiss under Fed. R. Civ. P. 12(b)(1) "generally take one of two forms. The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." Merrill Lynch Bus. Fin.

Servs, Inc. v. Nudell, 363 F.3d 1072, 1074 (10th Cir. 2004) (internal citation and quotations omitted). Here, defendants have facially attacked the sufficiency of the complaint's allegations as to the existence of subject matter jurisdiction. In analyzing such motions to dismiss, the Court must presume all of the allegations contained in the complaint to be true. Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002); Holt v. United States, 46 F.3d 1000, 1002-03 (10th Cir. 1995). This is the same standard of review applied to motions arising under Fed. R. Civ. P. 12(b)(6). See Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007).

### III.

Defendants move to dismiss on sovereign immunity grounds. Both OWRB and GRDA, as agencies of the State of Oklahoma, claim sovereign immunity in federal court pursuant to the Eleventh Amendment. Dkt. # 48, at 4; Dkt. # 47, at 2. State agencies that qualify as arms of the State, generally, possess sovereign immunity.[2] See Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 616 (2002) ("The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States and by its own citizens as well." (citations omitted)); Steadfast, 507 F.3d at 1252-53. This immunity applies to a State entity whether a plaintiff seeks declaratory, injunctive, or monetary relief. See Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 765 (2002). The Supreme Court has recognized two instances in which an individual may sue a state: (1) where the suit is authorized by Congress, and (2) where a State voluntarily waives

---

[2]  Because plaintiffs do not raise the issue, see Dkt. # 45, this Court assumes without deciding that OWRB, like GRDA, qualifies as an arm of the State. See Steadfast Ins. Co. v. Agricultural Ins. Co., 507 F.3d 1250, 1256 (10th Cir. 2007) ("[T]he GRDA is an agency of the State of Oklahoma and is thus entitled to claim Eleventh Amendment immunity from suit in federal court."). Plaintiffs only challenge whether GRDA has Eleventh Amendment immunity from suit in federal court. See discussion infra Part III.B.

its sovereign immunity. Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999).

Here, plaintiffs claim that OWRB and GRDA have voluntarily consented to federal jurisdiction. First, plaintiffs argue that GRDA's waiver of sovereign immunity in a 1960 lawsuit extends to defendants in this case. Dkt. # 48, at 5; Dkt. # 49, at 3-4. Plaintiffs aver that the Supreme Court's decision in Gunter v. Atlantic Line Railroad Co., 200 U.S. 273 (1906), directly supports their argument with respect to GRDA. Dkt. # 49, at 5. Second, plaintiffs argue — contrary to the Tenth Circuit's holding in Steadfast — that this Court "cannot conclusively determine that [GRDA] possesses Eleventh Amendment immunity simply by analyzing whether the agency is an arm of the state." Id. at 12. Third, plaintiffs argue that GRDA is not protected by sovereign immunity because GRDA has committed ultra vires acts. Id. at 14-16. The Court will address each of these arguments in turn.

**A. Extension of Waiver**

Plaintiffs argue that GRDA's waiver of sovereign immunity in 1960 extends to both defendants in this 2007 lawsuit. Dkt. # 48, at 5; Dkt. # 49, at 3-4. The 1960 case arose from the United States' construction of the Fort Gibson dam, which required condemnation of a seventy acre tract and acquisition of the corresponding "flowage rights." United States v. Grand River Dam Auth., 363 U.S. 229, 230-31 (1960) (The 1960 Case). GRDA sued the United States, arguing that GRDA had a vested interest, granted by the State of Oklahoma, in the waters of the Grand River. Id. at 234. GRDA claimed that the United States owed it additional compensation "for the 'taking' of its water power rights at [Fort] Gibson and its franchise to develop electric power and energy at that site." Id. at 231. The United States Supreme Court disagreed with GRDA's argument,

however. The Supreme Court found that GRDA was not entitled to any compensation, because the United States had not taken property from GRDA "in the sense of the Fifth Amendment." Id. at 235-36. The frustration of GRDA's plans and expectations to develop hydroelectric power at the Fort Gibson site did not equate to a "taking" of "business, contract, land, or property." Id. at 236. The Court concluded that the United States possessed the superior right under the Commerce Clause to build the Fort Gibson project. Id. at 236.

Plaintiffs argue that GRDA's invocation of federal jurisdiction in The 1960 Case extends to the present lawsuit. According to plaintiffs, the waiver in 1960 extends to GRDA and OWRB because both agencies are "bound by the State's decision (acting through its agency GRDA) in The 1960 Case to waive sovereign immunity as to the issue of the State's ownership interest in the waters of the Grand River." Dkt. # 45, at 8. Plaintiffs submit that once a State waives sovereign immunity with regard to a specific matter, the State cannot "use sovereign immunity as a shield to deprive its citizens from enforcing the judgment [as to that matter] rendered against the State." Id. Plaintiffs claim that the Supreme Court's decision in Lapides directly supports their proposition. Id. at 7; Dkt. # 49, at 9.

This Court disagrees. Lapides does not support plaintiffs' proposition. In Lapides, an employee of the University of Georgia system sued the University's Board of Regents in Georgia state court. 535 U.S. at 616. The University removed the case to federal court and then moved to dismiss the action for lack of subject matter jurisdiction. Id. The University, as an arm of the State, asserted that it could not be sued in federal court by virtue of the Eleventh Amendment. Id. Rejecting the University's argument, the Court held that the University's voluntary act of removing the suit from state court to federal court constituted a "clear" indication of the University's intent

5

to invoke federal jurisdiction. Id. at 620. The Eleventh Amendment presumably recognized the judicial need to avoid the "inconsistency, anomaly, and unfairness" that may result from "a State's selective use of 'immunity' to achieve litigation advantages." Id. Because the litigation act in Lapides — removal — was a clear waiver of sovereign immunity, the Court concluded that the University could not assert the otherwise valid objection to litigation of the matter in a federal forum. Id. at 620, 624.

Lapides does not address plaintiffs' waiver argument because the facts here are distinguishable. Unlike in Lapides, plaintiffs filed their suit in federal court. See Dkt. # 2. Obviously, neither GRDA nor OWRB could not have manifested a "clear" intent to waive sovereign immunity through an act such as removal because removal never was necessary. "The waiver-by-removal doctrine, therefore, cannot apply." Steadfast, 507 F.3d at 1256. While no Tenth Circuit decision directly addresses plaintiffs' extension of immunity argument, a recent decision by the Federal Circuit does.

In Biomedical Patent Management Corp. v. California Department of Health Services, 505 F.3d 1328, 1330-31 (Fed. Cir. 2007), petition for cert. filed, 76 U.S.L.W. 3410 (U.S. Jan. 22, 2008) (BPMC), the Federal Circuit held that a State is entitled to assert sovereign immunity under the Eleventh Amendment even if the State intervened in an earlier, related action that was dismissed for improper venue. BPMC involved three related suits over the span of nine years, in which the same State agency and the same private plaintiff disputed the alleged infringement of the same patent. See id. at 1331-32. In the first lawsuit, the State voluntarily invoked federal jurisdiction, and the court found that the State had waived its sovereign immunity for purposes of that suit. Id. at 1333. Based on the court's finding, plaintiff attempted to extend this waiver to the later lawsuit, because

6

the later lawsuit involved the same subject matter and parties. Id. at 1334. The court disagreed, however, finding that "a waiver generally does not extend to a separate lawsuit, and that any waiver, including one effected by litigation conduct, must be 'clear.'" Id. at 1341.

In arriving at this holding, the BPMC court closely reviewed prior Supreme Court and appellate court decisions. The court found Lapides distinguishable, as "Lapides itself, of course, did not involve the effect of waiver of immunity in one case on a State's ability to later assert immunity in a separate case; it involved waiver based on actions that occurred in the same action." Id. at 1336 (emphasis in original). The court also found that other decisions unquestionably stood for the principle that a State's prior waiver could be extended only where the waiver occurred in the same action or one continuous proceeding. Id. at 1336-1339. In Gunter, 200 U.S. at 281, 292, for example, the Supreme Court extended a State's prior waiver of immunity to a subsequent ancillary proceeding, wherein the plaintiffs sought to enforce the decree from the first suit to which they were privy. In Vas-Cath Corp. v. Curators of the University of Missouri, 473 F.3d 1376, 1383-84 (Fed. Cir. 2007), the Federal Circuit extended a university's waiver because of the university's voluntary invocation of and participation in Patent and Trademark Office proceedings included the appeal in federal court. In New Hampshire v. Ramsey, 366 F.3d 1, 14-16 (1st Cir. 2004), the First Circuit concluded that a State's voluntary invocation of statutorily-provided arbitration, which included federal judicial review, qualified as an extendable waiver of immunity. The BPMC court reiterated that "where a waiver of immunity occurs in an earlier action that is dismissed, or an entirely separate action, courts . . . have held that the waiver does not extend to the separate lawsuit." Id. at 1339.

In light of the absence of Tenth Circuit precedent, this Court elects to follow the well-reasoned analysis in BPMC.³ Clearly, under BPMC, plaintiffs' argument fails. Plaintiffs seek to extend GRDA's waiver of sovereign immunity in The 1960 Case to the present matter simply because both actions involve State agencies and both actions involve the Fort Gibson water. Even if this Court were to find that both actions involved the same subject matter and the same parties, as in BPMC, the Federal Circuit's decision still does not support plaintiffs' argument. BPMC held that: (1) a waiver generally does not extend to a separate lawsuit, and (2) any waiver, including one effected by litigation conduct, must be clear. 505 F.3d at 1341. Under the facts of this case, the waiver of sovereign immunity in The 1960 Case occurred almost half a century ago in a Fifth Amendment "takings" case. See 363 U.S. at 231. The present matter, on the other hand, encompasses other issues and involves parties who are not privy to The 1960 Case. The present matter is an entirely separate lawsuit. Furthermore, plaintiffs do not allege, and this Court does not find, that OWRB and GRDA otherwise have demonstrated a "clear" intent to waive sovereign immunity. As noted by GRDA, if this Court were to extend GRDA's 1960 waiver, "a state would rarely be entitled to an Eleventh Amendment defense." Dkt. # 53, at 5. A State and all of its agencies "would forever be barred simply by virtue of once having sought relief in federal court."

---

³   Plaintiffs argue that BPMC is distinguishable because the first case in BPMC, unlike The 1960 Case, was not adjudicated on the merits. The Court fails to see the significance of plaintiffs' distinction. First, plaintiffs' argument is not supported by any citation to case law. Second, plaintiffs' argument ignores BPMC's emphasis on the separate and independent nature of the actions. If the "dismissed and then re-filed" action in BPMC qualified as separate and independent, then the present case is surely separate and independent from The 1960 Case. The 1960 Case was not dismissed and then re-filed by the same party, but was adjudicated forty-seven years ago, with a final judgment and appeal.

Id. The Court concludes, therefore, that OWRB and GRDA have legitimate challenges to the Court's subject matter jurisdiction.

Nevertheless, plaintiffs argue that BPMC misconstrued the Supreme Court's decision in Gunter. Plaintiffs claim that "the Federal Circuit erroneously concluded that the Gunter decision stood only for the proposition that a State's waiver extended to an ancillary proceeding in the same matter and not to a separate or independent action." Dkt. # 49, at 7. According to plaintiffs, Gunter's "focus was on the power of a federal court to administer relief and enforce a decree regarding a 'subject' in which the federal court had acquired jurisdiction due to the State's voluntary action in submitting the 'subject' to determination by the federal court." Id. at 8. This Court agrees that Gunter did, in fact, hinge at least partially on the federal court's ability to enforce the initial decree. The Supreme Court held that "the proposition that the 11th Amendment . . . control[s] a court of the United States in administering relief, although the court was acting in a matter ancillary to a decree rendered in a cause over which it had jurisdiction, is not open for discussion." Gunter, 200 U.S. at 292 (emphasis added).

The fact that Gunter hinged on such a finding, however, is irrelevant to the inquiry here. Gunter is not analogous, and plaintiffs incorrectly characterize this lawsuit as "nothing more than an attempt by the Plaintiffs to enforce th[e] judicial decree [from The 1960 Case] and obtain relief." Dkt. # 49, at 9. The 1960 Case is not analogous to the initial proceeding in Gunter, because The 1960 Case did not involve a decree or injunction. It resolved only one issue: whether the United States had committed a "taking" under the Fifth Amendment. See 363 U.S. at 230, 236. Likewise, unlike in Gunter, plaintiffs do not seek to enforce a decree or injunction to which they are privy. See U.S. at 283 (noting that only a party in privity with the injunction from the first suit could seek

9

to enforce the decree in the ancillary proceeding).  Obviously, if such a decree already existed, plaintiffs would not be seeking declaratory and injunctive relief now.  Plaintiffs' attempt to discredit the analysis in BPMC is unavailing.

Contrary to plaintiffs' contention, moreover, Gunter does not stand for the proposition that a State's waiver extends in perpetuity to any "subject" covered by the original waiver simply because the Supreme Court used the word "subject."  Dkt. # 49, at 8.  Gunter holds that a federal court's power to hear a case under the Eleventh Amendment is distinct from a federal court's power to enforce a decree over which it already has jurisdiction.  200 U.S. at 292.  ("To confound the two classes of cases is but to overlook the distinction which exists between the power of a court to deal with a subject over which it has jurisdiction, and its want of authority to entertain a controversy as to which jurisdiction is not possessed.").  Gunter's use of the word "subject" is inconsequential.  The Court did not place any particular emphasis on the word "subject," and a review of the relevant section of the opinion reveals that the Court used the words "controversy," "cause," "case," and "subject" interchangeably.  See id.  Plaintiffs' semantic argument is without merit.

To the extent plaintiffs arguments may be construed as asserting judicial estoppel,[4] the Court finds that OWRB and GRDA are not judicially estopped from asserting sovereign immunity. Judicial estoppel is an equitable doctrine and may be invoked by a court on a discretionary basis. New Hampshire v. Maine, 532 US. 742, 750 (2001).  Courts created the doctrine for the purpose of

---

[4]  The Court includes this analysis out of an abundance of caution.  Plaintiffs submit that once a State waives sovereign immunity with regard to a specific matter, the State cannot "use sovereign immunity as a shield to deprive its citizens from enforcing the judgment rendered against the State" as to that matter.  Dkt. # 45, at 8.  Plaintiffs do not actually use the word "judicial estoppel" anywhere in their two briefs, but instead refer to the "principles of unfairness and inconsistency."  Dkt. # 49, at 10

10

"protect[ing] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." Id. at 749-50 (internal quotation marks and citations omitted). "Judicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" Id. at 749 (quoting Pegram v. Herdrich, 530 U.S. 211, 227 n. 8 (2000)). Three factors generally control whether judicial estoppel applies: (1) whether the suspect party's subsequent position is clearly inconsistent with its former position; (2) whether the suspect party has succeeded in persuading a court to accept the party's former position, "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) whether the suspect party is seeking to assert an inconsistent position to gain an unfair advantage in the litigation. Eastman v. Union Pac. R. Co., 493 F.3d 1151, 1156 (10th Cir. 2007) (internal quotation marks and citation omitted) (alteration in original).

Here, the Court finds that neither defendant is estopped from asserting sovereign immunity. First, the doctrine does not apply to OWRB. Judicial estoppel is invoked in cases in which the same suspect party maintains clearly inconsistent positions. See BPMC, 505 F.3d at 1341-42 (finding that judicial estoppel did not preclude California Department of Health Services from waiving sovereign immunity in the first suit and asserting it in the 2006 case); see also New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (concluding that judicial estoppel barred New Hampshire from asserting a position contrary to its geographical boundary line argument in the 1970s litigation). OWRB was not involved in The 1960 Case and thus cannot assert a clearly inconsistent position here. Further, to the extent plaintiffs may argue that GRDA qualifies as a "suspect party," the Court finds that

11

GRDA's actions forty-seven years ago are not attributable to OWRB. OWRB, as a separately named defendant, is independent of GRDA in this suit.

Second, and more significantly, judicial estoppel does not apply to GRDA. The Tenth Circuit recently has noted, albeit in <u>dicta</u>, that a State agency's "deci[sion] not to assert its sovereign immunity when faced with other suits filed in federal court[] has no bearing on whether the [agency] has waived its sovereign immunity in the case [at] [hand]." <u>Steadfast</u>, 507 F.3d at 1256 n.5. This footnote intimates that, at least in the Tenth Circuit, judicial estoppel may not be used to circumvent the Eleventh Amendment. Accordingly, the Court declines any invitation to merge sovereign immunity principles with the doctrine of judicial estoppel.

Plaintiffs' remaining arguments pertain only to GRDA. Therefore, the Court finds that OWRB's motion should be granted. In light of this finding, the Court need not address the parties' arguments pertaining to standing and abstention.

### B. Plaintiffs' Challenge to the Propriety of <u>Steadfast</u>

Plaintiffs claim that the Tenth Circuit's decision in <u>Steadfast Insurance Co. v. Agricultural Insurance Co.</u>, 507 F.3d 1250 (10th Cir. 2007) incorrectly "focused on federal case authority and did not look to Oklahoma law to determine whether Oklahoma had sovereign immunity for the claims at issue or whether such immunity extended to GRDA." Dkt. # 49, at 11. Plaintiffs argue that a federal court "cannot conclusively determine that a state agency possesses Eleventh Amendment immunity simply by analyzing whether the agency is an arm of the state." <u>Id.</u> at 12. Plaintiffs aver, therefore, that this Court's analysis of Eleventh Amendment immunity must begin with resolving "whether [GRDA] has established sovereign immunity regarding [the] particular

12

claim[s] at issue." Id. Plaintiffs cite the Fifth Circuit's decision in Meyers ex rel. Benzing v. Texas, 410 F.3d 236 (5th Cir. 2005), in support of their proposition.

As plaintiffs are aware, this Court cannot overrule controlling Tenth Circuit precedent. Steadfast does not require this Court to analyze immunity from liability under Oklahoma law to determine whether a State agency has immunity from suit in a federal forum under the Eleventh Amendment. See 507 F.3d at 1253 (looking to four primary factors — none of which include governmental immunity under State law — in determining whether a State agency possesses Eleventh Amendment immunity). Regardless of whether Meyers supports plaintiffs' argument, this Court is not bound to follow the Fifth Circuit's analysis. Therefore, this Court declines plaintiffs' invitation to secondguess Steadfast. Plaintiffs' argument is preserved for purposes of appeal.

### C. Ultra Vires

Nevertheless, plaintiffs argue that GRDA is not protected by the Eleventh Amendment because GRDA's sale of the Fort Gibson water constitutes an ultra vires act. Dkt. # 49, at 16. According to plaintiffs, the sale is ultra vires because the Supreme Court "found in The 1960 Case that neither GRDA nor the State owned the waters of the Grand River." Id. Plaintiffs cite Justice Brennan's dissenting opinion in Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984), as supporting authority. The Court need only briefly address this argument.

In a suit for specific relief against a sovereign, an exception to Eleventh Amendment immunity may exist where a government official commits an ultra vires act, or in other words, acts beyond his statutory authority. Wyoming v. United States, 279 F.3d 1214, 1229 (10th Cir. 2002). Official action does not qualify as ultra vires, however, simply because it is erroneous or incorrect as a matter of law. State of N.M. v. Regan, 745 F.2d 1318, 1320 n.1 (10th Cir. 1984). To qualify

13

as ultra vires, the alleged wrong must have been outside the scope of the powers delegated by the sovereign to the government official. Wyoming, 279 F.3d at 1230; see Halderman, 465 U.S. at 101 n.11 ("[A] state officer may be said to act ultra vires only when he acts 'without any authority whatever.'" (quoting Fla. Dep't of State v. Treasure Salvors, Inc., 458 U.S. 670, 697 (1982))). If plaintiffs do not allege that the officer acted without authority, "the suit is in fact against the sovereign and may not proceed unless the sovereign has consented." Id.

Here, even if this Court were to assume, arguendo, that the ultra vires exception extends to State agencies like GRDA,[5] plaintiffs' argument nonetheless fails. As conceded by plaintiffs in their brief, Oklahoma law authorizes GRDA to sell the Fort Gibson water. See OKLA. STAT. tit. 82, § 862(a) ("The district . . . is hereby authorized . . . to . . . use, distribute and sell [the waters of the Grand River and its tributaries]"). Thus, plaintiffs cannot legitimately claim that GRDA has acted "without any authority whatever." Halderman, 465 U.S. at 101 n.11 (internal quotation marks and citation omitted). Moreover, whether GRDA's sale of the Fort Gibson water is erroneous or incorrect as a matter of law is irrelevant to the Eleventh Amendment inquiry. Wyoming, 279 F.3d at 1230. The Court concludes, therefore, that the ultra vires exception does not apply to GRDA. GRDA has Eleventh Amendment immunity from suit in a federal forum.

---

[5]  The Court questions the veracity of this assumption, given that Halderman, 465 U.S. at 100, specifically held that "[i]t is clear, of course, that in the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."

**IT IS THEREFORE ORDERED** that Defendant Oklahoma Water Resources Board's Motion to Dismiss (Dkt. # 30) and the Motion to Dismiss (Dkt. # 47) filed by the Grand River Dam Authority ("GRDA") are hereby **granted**. OWRB and GRDA are dismissed as parties. Counts Two and Three are dismissed in their entirety, as these counts seek relief against GRDA only.

**DATED** this 25th day of February, 2008.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT